IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BARRY K. HOLT,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 13-85-BLG-SEH-CSO<br><br>FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Barry Holt's application for writ of habeas corpus under 28 U.S.C. § 2254. Holt is a state prisoner proceeding pro se.

Respondents ("the State") filed an Answer on April 7, 2014. After Holt was granted two extensions of time to file a Reply, the deadline expired on June 19, 2014. Holt did not file a Reply.

**I. Background**

As the State's Answer and brief in support demonstrate, the procedural course of Holt's cases in the trial court was convoluted. *See* Answer (Doc. 18) at 2-31 ¶¶ 2-37. Ultimately, Holt was convicted in two cases in Montana's Twenty-Second Judicial District Court, Carbon County. In one, Cause No. DV 08-54, Holt was convicted at bench trial of failing to register as a sex offender, a violation of

1

Mont. Code Ann. § 46-23-504(1)(c). In the other, Cause No. DV 09-06, at the conclusion of the first day of a jury trial, Holt pled guilty to burglary, a violation of Mont. Code Ann. § 45-6-204.[1] The plea agreement reached in the burglary case also affected Holt's sentence for failure to register. Holt was sentenced to serve five years for failure to register and ten years for burglary, concurrent. He was designated a Level III sex offender and required to complete both phases of a sex offender treatment program as a precondition to eligibility for parole. *See* Pet. (Doc. 1) at 2-3 ¶¶ 1-5; Judgment No. 08-54 (Doc. 18-60) at 3 ¶ 1; Judgment No. 09-06 (Doc. 18-115) at 3 ¶ 1.

Holt filed notices of appeal as to both convictions, but his only allegations on appeal pertained to his sentence for burglary. *See* Appellant Br. in Supp. (Doc. 18-123) at i, *State v. Holt*, No. 10-0060. After full briefing, the Montana Supreme Court affirmed in part and reversed in part, directing the trial court to vacate Holt's designation as a Level III sex offender in connection with the burglary conviction. *State v. Holt*, 249 P.3d 470, 475 ¶ 22 (Mont. 2011). The designation was duly stricken. Order (Doc. 18-118) at 1.

On February 15, 2012, Holt signed a petition for postconviction relief and

---

[1] Although it described the offense as felony burglary, the Judgment in Cause No. DV 09-06 cited to Mont. Code Ann. § 45-6-205, possession of burglary tools, a misdemeanor offense. The Judgment was amended by Order to correct the code section. *Compare, e.g.*, Judgment (Doc. 18-115) at 3 ¶ 1 *with* Order (Doc. 18-117) at 1.

sent it to the trial court. *See* Notice of Appeal Attachments (Doc. 18-127 at 4-17).[2] In view of the filing fee of $120.00, he moved to proceed in forma pauperis, explaining that he was paid $51.71 per month by Montana Correctional Enterprises and had an account balance of $50.00. In Forma Pauperis Application (Doc. 18-127 at 70-71). The trial court ordered Holt to pay a filing fee of $25.00. Order (Doc. 18-127 at 2). Holt did not pay the fee. Br. in Supp. (Doc. 2) at 5; Resp. by District Court (Doc. 18-130) at 2, 4.

In October 2012, Holt requested a copy of the trial court's file. When he was told that a copy of the file would cost $82.06, *see* Letter (Doc. 18-127 at 3), Holt filed a notice of appeal (Doc. 18-127 at 1). The Montana Supreme Court construed the notice as a petition for writ of supervisory control and ordered a response from Judge Jones. Order (Doc. 18-129) at 1. On December 18, 2012, the Montana Supreme Court accepted Judge Jones's rationale for imposing a filing fee and denied supervisory control. Order (Doc. 18-131) at 2.

Holt signed his federal habeas petition and deposited it in the prison mail system almost six months later, on June 4, 2013. Pet. at 8, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

## II. Holt's Claims

First, Holt contends that he was denied due process and access to the courts

---

[2] The petition's certificate of service shows that it was mailed to the County Attorney and the Attorney General, but no one disputes that the trial court received it.

3

by the state courts' imposition of a filing fee. Pet. at 4 ¶ 13A; Br. in Supp. (Doc. 2) at 6-7.

Second, Holt asserts that his guilty plea was involuntary because counsel allowed Holt to be held in segregation for three years before he pled guilty and allowed the prosecution to manipulate the timing of Holt's state and federal cases to gain the advantage of an illegal persistent felony offender enhancement at sentencing in the state cases. Holt also alleges that counsel were ineffective because they failed to challenge a photo line-up, a *Brady* violation, and an unconstitutional search. He further avers that all of counsel's errors caused him cumulative prejudice. Pet. at 5 ¶ 13B; Br. in Supp. at 7-9.

Finally, Holt argues that appellate counsel was ineffective because she missed the same issues as trial counsel, and the prejudice to him was cumulative. Br. in Supp. at 9-10.

### III. Analysis

**A. Postconviction Petition Filing Fee**

Holt contends he was denied "access to the courts to address the legality of his sentence" because he made only $50.00 per month but was required to pay a filing fee of $120.00. Br. in Supp. at 5-6. He describes this deprivation as one of three issues on which he believes he is entitled to federal habeas relief "through the equal protections clause of the 14th Amendment." *Id.* at 6 (emphasis added).

## 1. Procedural Issues

The State asserts that Smith's petition is untimely because it was filed more than a year after his conviction became final. *See* Answer at 3-7; 28 U.S.C. § 2244(d)(1)(A). The "one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis." *Mardesich v. Cate*, 668 F.3d 1164, 1172 (9th Cir. 2012). The one-year limitations period for this claim did not commence when Holt's conviction became final, because the facts underlying it did not exist at that time. The limitations period for this claim commenced on "[t]he date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(D). Holt's opportunity to proceed with a petition for postconviction relief was not finally closed until December 18, 2012, when the Montana Supreme Court concluded its proceedings on Holt's recharacterized notice of appeal. Holt filed his federal petition on June 18, 2013, well within one year of that date. This claim, therefore, was timely filed in federal court.

The State also asserts that this claim is not cognizable in federal habeas because it does not address the legality of Holt's custody but, rather, challenges the manner in which the postconviction proceedings were conducted in state court. But Holt alleges that he did not have the same opportunity to challenge his conviction and sentence that other Montana prisoners have. Unlike the petitioners in *Cress v.*

*Palmer*, 484 F.3d 844 (6th Cir. 2007) (challenging state court's denial of a hearing), and *Alston v. Florida Dep't of Corrs.*, 610 F.3d 1318 (11th Cir. 2010) (challenging voluntariness of waiver of postconviction proceedings), *discussed in* Br. in Supp. of Answer (Doc. 19) at 58, Holt alleges a defect in his access to postconviction proceedings. The claim is cognizable in federal habeas to the same extent as the claim at issue in federal habeas proceedings in *Evitts v. Lucey,* 469 U.S. 387 (1985). If Holt's access to the State's established procedures for contesting the legality of his conviction and sentence was unlawfully foreclosed, then the State may not maintain his conviction or sentence. *Id.* at 390-91 (affirming trial court's issuance of conditional writ "ordering [petitioner's] release unless the Commonwealth either reinstated his appeal or retried him."). Thus stated, the claim is cognizable in federal habeas.

### 2. Merits

The State is correct, however, that the facts of Holt's case do not rise to the level of unlawful foreclosure of a proceeding. Holt contends that Carbon County is "the only jurisdiction in the State of Montana" to require a filing fee "for indigent prisoners." Br. in Supp. at 7. This equal-protection claim assumes the truth of Holt's claim that he was indigent. But Judge Jones's order to Holt and response to the petition for supervisory control made clear that Holt was required to pay only a

partial filing fee of $25.00. Resp. to Pet. (Doc. 18-130) at 3-5.[3] The Montana Supreme Court held that, pursuant to Mont. Code Ann. § 25-10-404(5) and (6), the trial court was "authorized to make a determination whether a prisoner filing a civil claim shall be required to pay the filing fee or a portion thereof" and concluded the court "acted within its discretion in determining that Holt was able to pay $25.00 – a portion of the fee." Order (Doc. 18-131) at 2.

Because the Montana Supreme Court decided Holt's claim on the merits, federal habeas relief is not available unless its decision was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The United States Supreme Court holds that state prisoners cannot be prevented from filing postconviction or other collateral challenges to their convictions merely because they cannot pay a filing fee: "to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws." *Smith v. Bennett*, 365 U.S. 708, 709 (1961). But *Smith* does not preclude a trial

---

[3] Holt's federal petition contends he was required to pay a filing fee of $120.00. Br. in Supp. at 5. This allegation misrepresents the facts. *See* Order (Doc. 18-127 at 2) (attached to Holt's Notice of Appeal/Pet. for Supervisory Control); Answer (Doc. 18) at 34. Holt was not required to pay $120.00.

court from finding a litigant can afford to pay a filing fee, in part or in full. In Holt's case, the State did not "interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty," *Smith*, 365 U.S. at 709, because Holt was found not indigent to the extent of the $25.00 filing fee.

Nor was the Montana Supreme Court's decision based on an unreasonable determination of the facts. Holt attached to his notice of appeal his motion to proceed in forma pauperis, which showed he had $51.71 in income every month from employment with Montana Correctional Enterprises and a $50.00 cash balance, and that no persons were dependent upon him for support. *See* Notice of Appeal/Pet. for Supervisory Control (Doc 18-127 at 70-71); Answer (Doc. 18) at 34. Judge Jones, likewise, advised the Montana Supreme Court that he found Holt's income enabled him to pay a filing fee of $25.00. Resp. by District Court to Pet. (Doc. 18-130) at 4.

Holt cannot meet the standards of 28 U.S.C. § 2254(d). He merely disagrees with the trial court's finding that he could afford to pay a filing fee of $25.00. This claim should be denied for lack of merit.

**B. Voluntariness of the Plea and Ineffective Assistance of Trial Counsel**

Holt alleges that his constitutional rights were violated when his home was searched without a warrant and when a photographic line-up was lost and relocated

immediately before trial. He also claims that his placement in harsh conditions of confinement for a long period of time, as well as the timing of the state and federal cases against him, were designed to "tenderize" him and compel him to plead guilty. He obliquely refers to his right to a speedy trial as well. Br. in Supp. at 7-9.[4]

A guilty plea is "a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Because Holt "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not . . . raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also* Trial Tr. (Doc. 18-100) at 293:7-9. Instead, "[t]he focus of federal habeas inquiry is the nature of [counsel's] advice and the voluntariness of the plea." *Henderson*, 411 U.S. at 266.

Counsel's alleged ineffectiveness in litigating the matters of which Holt complains does not undermine the voluntariness of his guilty plea unless no reasonably competent attorney could have found a guilty plea advisable under all the circumstances. In other words, at this stage of the proceedings, Holt must

---

[4] Holt was heard on each of these matters in the trial court. Despite the fact that no evidence was obtained in the search of Holt's home, counsel filed a motion to suppress evidence, along with a motion to dismiss the Information, contending the State's showing of probable cause was insufficient. The trial court denied the motion. Order (Doc. 18-82) at 7. The trial court also heard matters pertaining to the purported "loss" of the color photographs used in the photographic line-up and the conditions of Holt's pretrial confinement. *See, e.g.*, Speedy Trial Hr'g Tr. (Doc. 18-91) at 31:16-32:19, 38:24-62:6, 88:4-94:3, 256:15-276:5 (conditions of confinement); *id*. at 138:11-149:10, 249:7-253:25 (photographic line-up).

9

allege sufficient facts to support a reasonable inference not only that the matters of which he complains were, indeed, constitutional violations, but also that his attorneys' advice to plead guilty fell "outside the range of competence demanded of attorneys in criminal cases." *Tollett*, 411 U.S. at 268 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (internal quotation marks omitted)).

For the following reasons, Holt cannot make that showing.

### 1. Effect of Convictions on Sentences in State and Federal Court

Holt claims the prosecution deliberately timed the state and federal prosecutions to maximize Holt's exposure at his state sentencing and that he was not properly subject to PFO designations. He also claims that the conditions of his confinement were so harsh that he was compelled to relinquish his right to trial in order to obtain relief from them. These claims, if true, would undermine the voluntariness of his guilty plea and the effectiveness of counsel's advice that he take the plea bargain offer. But his claims are wrong on the law and the facts demonstrated by the record.

Contrary to Holt's claims of bad faith in the timing of the state and federal prosecutions, the parties reached an agreement to defer prosecution under which the charges in the first state case filed against Holt, Cause No. DC 06-053, were dismissed in an attempt to *limit* Holt's criminal history calculation in federal court. *See* Deferral Agreement at 3 ¶ 4 (Doc. 18-88 at 23); *see also* U.S.S.G. §§ 4A1.1(a),

4A1.2(a)(1), (a)(4). Holt correctly claims that, in the end, the criminal history calculation made little difference in his federal sentence. But he fails to understand what could lawfully have happened at his federal sentencing. Neither the conduct underlying the burglary charge nor the conduct underlying the failure-to-register charge was "relevant conduct" in the federal felon-in-possession case. *See* U.S.S.G. §§ 1B1.3, 2K2.1, Sentencing Tr. (Doc. 26) at 6:17-7:10, *United States v. Holt*, No. CR 07-81-BLG (D. Mont. Dec. 18, 2008). Therefore, Holt could have been required to serve his federal sentence consecutive to any other sentence. U.S.S.G. § 5G1.3(d). The United States' sentencing memorandum in the federal proceeding demonstrates that the state lawyers' concerns were justified. *See* U.S. Sentencing Mem. (Doc. 17) at 2-7, 9, *Holt*, No. CR 07-81-BLG (D. Mont. Oct. 30, 2008) (seeking upward departure on the grounds that Holt's criminal history, as calculated under the guidelines, did not accurately represent his likelihood to reoffend).

When Holt returned to state court, the State filed notice of its intent to pursue a persistent felony offender ("PFO") designation[5] against him based on the federal sentence. This designation was not contemplated by the deferral agreement

---

[5] Designation as a persistent felony offender replaces the otherwise-applicable maximum sentence for the offense of conviction with a maximum sentence of 100 years. Mont. Code Ann. §§ 46-18-501, -502(1). A second designation results in imposition of a ten-year mandatory minimum, and the sentence on the second designation must run consecutive to any other sentence. *Id.* § -502(2), (4).

that resulted in dismissal of the charges in DC 06-053; the agreement provided only for revival of the previously-dismissed burglary charge, the addition of a charge of failure to register as a sex offender, and a five-year sentence with an additional 15 years suspended. *See* Deferral Agreement at 1-4 (Doc. 18-88 at 21-24). But, after the conclusion of the federal prosecution, Holt notified the State he did not intend to comply with the deferral agreement. *See* Hr'g Tr. (Doc. 18-91) at 343:1-5. The State was consequently relieved of its obligations under the agreement. *See* Deferral Agreement at 4 (Doc. 18-88 at 24); State's Notice of Withdrawal (Doc. 18-45) at 1. It could then properly file the failure to register charge separately from the burglary charge, *see* Deferral Agreement at 4 (Doc. 18-88 at 24), as it did on January 21, 2009, *compare* Information 08-54 (Doc. 18-32) at 1-2 *with* Am. Information 08-54 (Doc. 18-43) at 1-2; Information 09-06 (Doc. 18-63) at 1-2. It could also impose whatever PFO designations it saw fit. Further, a PFO designation was contemplated even before the parties reached their agreement. Its imposition after the federal proceedings concluded was not unanticipated. *See, e.g.*, Hr'g Tr. (Doc. 18-91) at 297:2-17, 302:25-304:10. None of these facts suggest that the timing of the state and federal prosecutions was manipulated for the purpose of imposing additional punishment on Holt.

Moreover, Holt was lawfully subject to PFO designations on the burglary charge as well as on the charge of failure to register as a sex offender. A State does

12

not violate federal due process when it points to an enhanced penalty as an incentive to the defendant to plead guilty, even if the enhanced penalty is a death sentence. *Brady v. United States*, 397 U.S. 742, 748 (1970). Under Montana law, even if Holt had not been convicted of the federal offense, he could have been designated a PFO if the State had convicted and sentenced him for burglary before it convicted him for failure to register, or vice versa. *State v. Hamm*, 818 P.2d 830, 834-35 (Mont. 1991); Mont. Code Ann. § 46-1-202(7). With the federal conviction, state law permitted Holt to be designated a PFO based on the federal conviction and subjected to a maximum sentence of 100 years for failure to register. It also permitted Holt, if subsequently convicted of burglary, to be designated a PFO based on the failure to register conviction and subjected to a minimum sentence of 10 years and a maximum sentence of 100 years for failure to register, *consecutive* to the burglary sentence. *See* Mont. Code Ann. § 46-18-502(2), (4).

As it happened, none of these things occurred, because Holt reached a plea agreement with the State. By pleading guilty to burglary, Holt avoided being designated a persistent felony offender on both the failure to register charge – a charge of which he had already been found guilty at a bench trial – and on the burglary charge. Trial Tr. (Doc. 18-100) at 269:2-6, 269:19-24. The sentences for each offense were to be served concurrently, *id.* at 269:24-25, whereas they would

13

have been consecutive if the State sought to have Holt sentenced as a PFO on each charge, Mont. Code Ann. § 46-18-502(2), (4). The plea agreement reduced Holt's exposure at sentencing from a statutory maximum of 200 years in prison to a statutory maximum of 25 years, with the State bound to recommend a total sentence of 10 years with no restriction on Holt's eligibility for parole. Holt expressly acknowledged that he was waiving his right to appeal his conviction, Trial Tr. (Doc. 18-100) at 283:6-11, and specifically waived the right to appeal "any pretrial issue," *id.* at 269:7-12. While the agreement was not binding on the trial court, if the judge rejected it and imposed a sentence greater than the agreement contemplated, Holt could have withdrawn his plea and proceeded to trial. Trial Tr. (Doc. 18-100) at 287:20-288:17.

Far from it being unreasonable for counsel to advise Holt to waive his allegations of constitutional violations preceding his guilty plea to burglary, competent counsel could hardly have advised him otherwise. He obtained considerable benefits from the plea agreement. Holt's acceptance of the agreement's benefits was voluntary.

### 2. Conditions of Confinement

The conditions of Holt's confinement are also relevant to the voluntariness of his guilty plea to burglary. In connection with a motion to dismiss for violation of the right to a speedy trial, Holt testified in the trial court about the conditions of

his pretrial confinement. Hr'g Tr. (Doc. 18-91) at 26:12-32:22, 39:1-40:24, 42:19-63:16, 88:4-94:3. Holt's counsel also called a licensed clinical professional counselor to testify about his observations of Holt in pretrial detention. *Id.* at 256:15-276:5. The State called a sergeant at the Yellowstone County Detention Center ("YCDC"). *Id.* at 318:22-329:6. Two of Holt's previous defense attorneys testified at the hearing.

Charges of attempted sexual assault or failure to register as a sex offender were pending against Holt throughout the period of his detention at YCDC. Consequently, he was held in a secure unit called "Classification B," or "Class B," with other detainees accused of sex crimes. Due to extended plea negotiations in DC 06-053 and the intervening federal prosecution, Holt was held in that unit for an extraordinarily long time, *see, e.g.*, Hr'g Tr. (Doc. 18-91) at 324:17-326:7, about three years, minus a seven-month period in federal custody. Conditions in Class B were significantly more restrictive than elsewhere in the YCDC. *Id.* at 259:12-260:6.[6]

In his brief, Holt contends that he was locked in his cell 23 hours every day and "was offered no recreation or exercise of any kind." Br. in Supp. at 1. At the

---

[6] Holt was represented by counsel at this hearing. They were attempting to develop evidence to support Holt's claim of a violation of his right to a speedy trial by showing that he was prejudiced by oppressive pretrial incarceration. *See State v. Ariegwe*, 167 P.3d 815, 842-43 ¶¶ 88-90 (Mont. 2007). The testimony at the hearing is therefore directly relevant to Holt's current claim.

hearing, Holt said he was locked down "21 and 23 hours a day." Hr'g Tr. at 32:5-7. Sergeant Pluhar testified that detainees in Class B are locked down 21 hours a day, with time in the day room and outdoor access when weather permitted for 90 minutes in the morning and 90 minutes in the afternoon. *Id.* at 324:6-16. In his brief, Holt states that he had "no history of mental illness" but was prescribed Prozac and Remron. Br. in Supp. at 2. At the hearing, the counselor testified that he observed increased indications of anxiety and depression in Holt between December 2007 and February 2008, but he also noted that Holt's behavior might have been manipulative to some extent. Hr'g Tr. at 258:6-12, 261:8-263:15, 267:20-269:17. A mental health counselor was available 24 hours per day. Holt regularly saw the counselor and was placed on medications to stabilize his moods. The counsel said he observed Holt to be "real uncomfortable, anxious, depressed" and to have "sleep issues" and "fairly significant anxiety and discomfort," the counselor did not say he observed Holt to be mentally ill or that he had serious concerns about Holt's condition. *Id.* at 258:6-12, 270:10-275:5. While both of Holt's prior defense attorneys were aware of his concerns about the conditions of his confinement at YCDC, *see id.* at 154:2-155:5, 210:6-17, neither attorney testified that he became concerned about Holt's mental state.

Finally, the timing of Holt's decision to plead guilty tends to refute his allegation that he was "tenderized" into pleading guilty in order to escape harsh

16

conditions of pretrial confinement. Holt did not plead guilty to the failure to register charge. He was tried by the court on March 23, 2009. Case Register DC 08-54 (Doc. 18-30) at 3 Entry 57. Holt pled guilty in the burglary case, but he did so at the end of the first day of trial on July 27, 2009, just hours away from full realization of his right to be tried by a jury of his peers. Case Register DC 09-06 (Doc. 18-61) at 9 Entry 168. He heard the State say it believed a plea agreement was wise because it foresaw "a lot of evidence issues," "significant issues," and "there's a great risk if we moved forward to trial of not getting a conviction." Trial Tr. (Doc. 18-100) at 274:19-275:12. Even so, Holt stated, under oath, that he knew he was "in the midst of jury trial" and could "persist in [his] not guilty plea and persist on going to trial" if that was what he wanted to do. *Id.* at 280:23-281:2. He also stated that he had not been "intimidated or influenced in any way in signing this acknowledgment of waiver of rights or entering into the plea agreement," and his lawyers agreed. *Id.* at 287:9-20. Although Holt subsequently filed pro se motions to withdraw his guilty plea and to strike his plea colloquy, *see* Pro Se Mots. (Docs. 18-103, 18-105), at sentencing, he personally withdrew those pro se motions, Sentencing Tr. (Doc. 18-114) at 7:7-8:2.

Taken together, these elements of the record created in the proceedings in state court conclusively refute Holt's allegations that the conditions of his confinement "tenderized" him and compelled him to plead guilty.

17

### 3. Conclusion

There is no reason to question the voluntariness of Holt's guilty plea to burglary and no reason to question the competence of counsels' advice to plead guilty. All of Holt's remaining claims should be denied for lack of merit under the rule of *Henderson*.

### C. Ineffective Assistance of Appellate Counsel

Similarly, there is no reason to question appellate counsel's performance. Matters not developed on the record cannot be raised on appeal, *see* Mont. Code Ann. § 46-20-701(1), and Holt's guilty plea waived claims of antecedent constitutional violations, *Henderson*, 411 U.S. at 267. Appellate counsel was not ineffective under the standards of *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Although the State asserts time- and procedural bars to Holt's claims, it also responded to his claims on the merits. On the merits, it is clear that no relief is available. Holt's disagreement with the trial court's determination that he could afford to pay a partial filing fee of $25.00 for his postconviction petition is not sufficient to overcome the stringent requirements of 28 U.S.C. § 2254(d). Holt's other claims were not decided by the Montana courts, but his guilty plea to burglary, at the end of the first day of trial, was plainly voluntary. He reached a highly advantageous plea bargain with the State. The voluntariness of his guilty plea and the competence of counsels' advice were not undermined by the conditions of Holt's confinement or by his mistaken allegations as to the timing of the state and federal prosecutions or the lawfulness of multiple designations as a persistent felony offender. Holt identifies no reason to believe appellate counsel was ineffective.

Holt fails to meet even the relatively low threshold of a substantial showing of a constitutional violation. Reasonable jurists would find no reason to encourage further proceedings. A COA should be denied.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (Doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a

judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Holt may object to this Findings and Recommendation within 14 days.[7] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Holt must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this case without notice to him.

DATED this 20th day of February, 2015.

/s/   *Carolyn  S. Ostby*
United States Magistrate Judge

---

[7] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.